**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | CRIM NO. 1:18-cr-606 |
| v. | : | **OPINION** |
| MATTHEW BURNEY | : | |
| *Defendant*. | : | |

This matter is before the Court on the pro se Motion for Reconsideration filed by Defendant Matthew Burney ("Defendant" or "Burney") [Dkt. 43] which asks the Court to reconsider its denial of Burney's pro se Motion for Compassionate Release. [Dkt. 40, 41]. Also before the Court is Burney's motion for the Court to appoint counsel to assist Burney with his motion for reconsideration. [Dkt. 56]. For the reasons set forth below, the Court will deny both motions

**I.  Background**

The Court has largely recited the relevant facts of this case once previously and, for the sake of efficiency, repeats those facts here:

> On October 9, 2018, Defendant Burney pled guilty to a one-count information for Bank Robbery under 18 USC § 2113(a), for the robbery of the PNC Bank in Marlton, New Jersey. In accordance with his plea agreement, Defendant Burney also conceded to two other bank robberies—the Bank of America robbery and Chase Bank robbery. On February 27, 2019, this Court sentenced Defendant Burney to eighty-seven (87) months in prison and three (3) years of Supervised Release; he is … projected to be released on February 26, 2024.

[Dkt. 40 at 1].

1

On June 1, 2020, Burney filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Dkt. 29] which sought release

> due to the ongoing Covid-19 pandemic, and for reasons related to his mother and son. Defendant Burney is forty- five (45) years old. He alleges that he has "some aliments," including hypertension, hyperthyroidism, osteoarthritis, fibromyalgia, and herpes simplex, and that he fears for his health during this time. His mother, who suffers from dementia COPD and high-blood pressure, resides in a nursing home. Defendant's son is a 22-year old community college student, who has been between homes during this pandemic, as he does not have a stable residence with his grandmother in a nursing home.

[Dkt. 40 at 1–2]. On January 6, 2021, the Court denied Burney's motion for compassionate release, finding that Burney did not present "extraordinary and compelling reasons" for his release as required under the First Step Act, 18 U.S.C. § 3582(c), and that the federal sentencing factors outlined in 18 U.S.C. § 3553(a) weighed against his release. [Dkt. 40 at 4–7; Dkt. 41]. The Court received Burney's belated reply to the Government's opposition brief only after issuing its opinion and order. [Dkt. 42].

On February 24, 2021, Burney filed the present motion, urging the Court to reconsider its denial of Burney's compassionate release motion. [Dkt. 43]. After filing his motion, Burney submitted a letter to the Court [Dkt. 45], a reply brief [Dkt. 46], a second letter to the Court [Dkt. 48], a second reply brief [Dkt. 49], a third letter to the Court [Dkt. 53], a sur-reply [Dkt. 54], and a supplemental memorandum [Dkt. 55], all of which include substantive information or argument concerning Burney's motion for reconsideration. Burney also wrote on May 3, 2021 to inform the Court that he has been transferred from FCI McKean to FCI Fort Dix. [Dkt. 52]. Most recently, on July 22, 2021, Burney moved the Court to appoint counsel to assist with his motion for reconsideration. [Dkt. 56]. This motion included a letter that repeated many of the same points raised in his prior communications. [Dkt. 56].

2

The Government opposed Burney's motion for reconsideration [Dkt. 44] and submitted a supplemental memorandum notifying the Court that Burney received two doses of the Pfizer-BioNTech COVID-19 vaccine.  [Dkt. 50].

## II.   Request for Counsel

Before addressing the merits of Burney's motion for reconsideration, the Court will first consider Burney's request to have counsel appointed, which the Court will deny.

As noted above, Burney filed his original motion for compassionate release, the present motion for reconsideration, and seven supplemental filings without legal representation.  Burney then requested representation "[d]ue to the numerous Federal Statutes involved, complexity of case law, [and] difference of opinions between District Courts on how the First Step Act applies to 18 U.S.C. § 3582(!)(A) [sic] and the Sentencing Commission's Governing Policy Statement § 1B1.13." [Dkt. 56].

Burney "does not have a constitutional right to appointment of counsel when seeking compassionate relief." *United States v. Dorsey*, No. CR 14-323-1, 2021 WL 603035, at *1 (E.D. Pa. Feb. 16, 2021) (citations and quotations omitted).  And while the Criminal Justice Act sets forth criteria to determine if financially eligible individuals are entitled to representation, *see* 18 U.S.C. § 3006A(a)(1), Burney does not meet any of these criteria.  Thus, Burney has no constitutional or statutory right to counsel with respect to the present motion for reconsideration.

Where parties lack statutory or constitutional rights to representation, "[t]he Court nonetheless has discretion to appoint counsel for an indigent litigant after considering several factors." *United States v. Ulmer*, No. CR 18-00579-3, 2021 WL 844579, at *2–3 (E.D. Pa. Mar. 5, 2021).  "First, 'a district court must assess whether the claimant's case has some arguable merit in fact and law.'" *Id.* (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 498–99 (3d Cir.

2002)).  If it does, the Court considers:

      1. the [party's] ability to present his or her own case;

      2. the difficulty of the particular legal issues;

      3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

      4. the plaintiff's capacity to retain counsel on his or her own behalf;

      5. the extent to which a case is likely to turn on credibility determinations, and;

      6. whether the case will require testimony from expert witnesses.

*Id.* at *2–*3 (quoting *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993)); *see also Dorsey*, 2021 WL 603035, at *2–*3.

      Burney is not entitled to counsel because his argument for reconsideration and ultimate request for early release have no merit in fact or law, for reasons that the Court will discuss below.  Even if his motion had merit, the six factors identified above do not justify appointment of counsel.  Burney has comprehensively and repeatedly articulated his position in his numerous submissions to the Court.  Further, whether Burney "is entitled to relief under § 3582(c)(1)(A) is a straightforward legal issue that he ably addresses in his pro se Motion for release" and subsequent submissions.  *Ulmer*, 2021 WL 844579, at *3.  As discussed below, the Court's review of its denial of Burney's motion for compassionate release is even narrower than its review of Burney's compassionate release motion.  *See Anello Fence, LLC v. VCA Sons, Inc.*, No. CV133074JMVJBC, 2019 WL 4894562, at *2 (D.N.J. Oct. 3, 2019) ("[T]here are three narrow grounds on which a motion for reconsideration may be granted.").  Although Burney appears unable to retain separate counsel, determination of this motion will not turn on credibility determinations or expert witnesses or require additional fact investigation.  Thus, the

4

Court will not exercise its discretion to grant Burney's request for counsel.

### III.     Legal Standard

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted). However, reconsideration is "an extraordinary remedy" and is granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). To succeed on a motion for reconsideration, the moving party must show "more than a disagreement" with the decision it would like reconsidered. *Anders v. FPA Corp.*, 164 F.R.D. 383, 387 (D.N.J. 1995). Instead, the moving party must show that "(1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Reich v. Schering-Plough Corp.*, No. CV 07-1508 (KSH), 2008 WL 11383793, at *1 (D.N.J. July 7, 2008) (collecting cases). Thus, a mere "recapitulation of the cases and arguments considered by this Court before rendering the original decision" does not warrant a grant of reconsideration. *Carteret Sav. Bank, F.A. v. Shushan*, 721 F. Supp. 705, 706 (D.N.J. 1989), *modified*, 919 F.2d 225 (3d Cir. 1990); *accord In re Gabapentin Patent Litigation*, 432 F. Supp. 2d 461, 463 (D.N.J. 2006); *S.C. v. Deptford Twp. Bd. of Educ.*, 248 F. Supp. 2d 368, 381 (D.N.J. 2003). A motion for reconsideration "is not … an opportunity for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment." *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 543 (D.N.J. 2013), *aff'd sub nom. Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685 (3d Cir. 2014) (collecting cases). A motion for reconsideration will therefore fail if the moving party raises arguments or presents evidence that could have been raised previously.

IV. **Discussion**

   a. **The Court Declines to Reconsider its Finding that Burney Does Not Present Extraordinary and Compelling Reasons for Early Release**

Burney first asks the Court to reconsider its ruling on his compassionate release motion because Burney was unable to submit his reply brief before the Court issued its ruling. [Dkt. 43 at 1–2]. Burney indicates that, on October 14, 2020, he requested an extension of time to file his reply brief so that he could research and respond to the Government's opposition brief. [*Id.*]. The Court neither granted nor denied this extension request. Burney claims that he was unable to complete his reply until January 8, 2021—two days after the Court's ruling—because he was placed in quarantine and, later, subject to lockdowns due to a COVID-19 outbreak at FCI McKean.[1] [*Id.*]. Burney argues that his reply brief clarified that "[i]n the month of December 2020, approximately 200 inmates contracted" COVID-19 at FCI McKean. [Dkt. 43 at 2]. Burney argues that COVID-19 statistics posted on the Bureau of Prisons website may not have reflected this outbreak, and that the December outbreak contradicts the Court's finding that "FCI McKean[2] has not yet experienced a Covid-19 outbreak; in fact, FCI McKean has low infection rates." [*Id.* (quoting Dkt. 40 at 4)].

Burney has not pointed to any case law suggesting that the Court clearly erred by ruling on his compassionate release motion without considering his reply brief. *Cf. United States v. Schmutzler*, No. 1:13-CR-00065, 2017 WL 4648146, at *3 (M.D. Pa. Oct. 17, 2017) ("[C]ourts that have directly addressed a court's failure to consider a reply brief in the context of a due

---

[1] Burney's reply brief details the hardships that he endured during quarantine and lockdown, including the BOP's failure to administer his daily medications for six days and restricted movement. [Dkt. 42 at 4–5]. Burney also tested positive for COVID-19 and suffered from symptoms of the virus. [*Id.* at 5; Dkt. 45 at 1–2].

[2] Though Burney is currently housed at FCI Fort Dix, he was previously housed at FCI McKean in Lewis Run, Pennsylvania.

process challenge have suggested that disposal of a case prior to the filing of a reply does not constitute a due process violation." (collecting cases)).

Although Burney argues that the Court considered inaccurate COVID-19 statistics when it ruled on his initial motion and that his reply brief could have shed light on the COVID-19 outbreak at FCI McKean, Burney does not identify any binding law that would have required the Court to grant Burney's motion because of the COVID-19 infection rates at FCI McKean in December 2020.[3] COVID-19 infections at FCI McKean by themselves could not have justified Burney's release in January. [Dkt. 40 at 4–5]; *see also United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner.") (footnote omitted).

Burney also fails to cite law that would have *required* the Court to find that Burney's combination of health and family conditions constituted extraordinary and compelling reasons for release, even with accurate COVID-19 statistics. Burney repeats the same arguments presented in his compassionate release motion concerning his own health and the wellbeing of his mother and adult son, arguments which the Court rejected. [Dkt. 43 at 3–4; Dkt. 45 at 1–2].

---

[3] Current Bureau of Prison statistics appear to corroborate Burney's claim that an outbreak occurred at some point, as more than 400 inmates tested positive for and recovered from COVID-19 infections. COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 18, 2021). Further correctional officers at FCI McKean have sued the federal government to recover hazard pay for working in a hazardous environment between October 2020 and March 2021, alleging that more than 500 inmates contracted the virus in that time. *See* Matthew Santoni, *Correctional Officers Seek Hazard Pay For COVID In Pa. Prison*, Law 360 (April 30, 2021), https://www.law360.com/articles/1380558/correctional-officers-seek-hazard-pay-for-covid-in-pa-prison. The Court recognizes that its analysis of COVID-19 infections is necessarily imperfect because the number of active COVID-19 infections in a facility can change from one day to the next.

But "'[a] party seeking reconsideration must show more than a disagreement with the Court's decision…'" *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001) (quoting *G–69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)).

Likewise, Burney does not cite any authority that would have *required* the Court to grant Burney's motion even if the Court determined that he presented extraordinary and compelling reasons for release. As the Third Circuit has recognized, "[c]ompassionate release is discretionary, not mandatory," and district courts may exercise their discretion to deny early release even where extraordinary and compelling reasons exist if the sentencing factors under 18 U.S.C. § 3553(a) counsel against early release. *United States v. Hogan*, 852 F. App'x 634, 636 (3d Cir. 2021). Applying these factors, the Court previously determined that Burney's multiple bank robberies were serious offenses that weighed against release. [Dkt. 40 at 6].

Burney fails to show that factual or legal errors or new evidence require the Court to reconsider its weighing of the § 3553(a) sentencing factors. Burney writes that he completed a forklift certification course and has qualified for a drug abuse treatment program. [Dkt. 43 at 4–5]. While these are commendable efforts that will surely help Burney reenter society when his sentence has run its course, they do not demonstrate that he is entitled to reconsideration of his compassionate release request. Burney also asks the Court to consider that he "admitted his guilt voluntarily" to a bank robbery for which he was not charged. [Dkt. 43 at 5]. But the Court already considered Burney's cooperation and candor when sentencing Burney and when denying his compassionate release request. [Dkt. 40 at 6]. Burney also writes that he has not been subject to any disciplinary action since his sentence began. [Dkt. 55 at 13]. But his past good behavior does not mean that the Court erred in denying his request for early release.

Ultimately, Burney's argument here seeks to "'rehash arguments already briefed'" in his

initial motion for compassionate release. *Hum. Genome Scis., Inc. v. Amgen, Inc.*, No. CV 07-780-SLR, 2008 WL 11515904, at *1 (D. Del. Aug. 21, 2008) (quoting *Adkins v. Rumsfeld*, 470 F. Supp. 2d 445, 447 (D. Del. 2007)). The Court therefore declines to reconsider its prior denial on this ground.

### b. The Third Circuit's Opinion in *United States v. Andrews* Does Not Require the Court to Reconsider Its Prior Ruling

Burney next argues that the Court improperly relied on the Sentencing Commission's Policy Statement, U.S.S.G. § 1b1.13 (the "Policy Statement"), and the factors set forth therein,[4] when denying his initial motion. Burney argues Court failed to consider factors beyond his health, family circumstances, and the COVID-19 as a result. [Dkt. 55 at 2–3]. Burney raised this argument for the first time in his belated reply brief which Burney wrote *after* the Court denied his motion. [Dkt. 42 at 14–17].

This argument requires some explanation. Federal statute provides that, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may reduce a sentence if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), effective December 21, 2018 (the "FSA"), § 3582(c) only permitted the Bureau of Prisons ("BOP") to petition courts on behalf of inmates whom the BOP determined to be eligible for early release. *See United States v. Andrews*, 12 F.4th 255, 257 (3d Cir. 2021) (discussing 18 U.S.C. § 3582(c)). In 2018, "[t]he FSA modified 18 U.S.C. § 3582(c)(1)(A)(i) by permitting prisoners to seek a reduction in their sentences." *Hare v. Ortiz*, No. CR 18-588-1(RMB), 2021 WL 391280, at *2

---

[4] As noted in the Court's opinion on Burney's initial motion, the Policy Statement lists four circumstances that may qualify as extraordinary and compelling reasons for sentence reduction: an inmate's medical condition, the age of the defendant, family circumstances, and "other reasons." *Id.* cmt. n.1(A)–(D).

9

(D.N.J. Feb. 4, 2021) (quoting *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020)). Under the FSA, inmates can now petition the BOP for early release and, if the BOP rejects or fails to respond to a petition, they may petition federal courts. See 18 U.S.C. § 3582(c)(1)(A); *Raia*, 954 F.3d at 595, 597 (explaining administrative exhaustion requirement for compassionate release motions). Burney filed his motion directly with the Court pursuant to the FSA.

The FSA did not alter the Policy Statement, which the Sentencing Commission issued before the FSA. Consistent with the pre-FSA regime, the Policy Statement applies to BOP-filed requests for early release. U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons…."); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020). Likewise, the "other reasons" provision states that release may be justified where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Neither Congress nor the Sentencing Commission has updated the Policy Statement or issued a new policy statement that reflects the FSA's changes to § 3582(c). *See Andrews*, 2021 WL 3852617, at *3 n.4.

As noted above, Burney argues that the Policy Statement is "outdated" following the FSA and does not bind district courts for inmate-filed motions like Burney's. [Dkt. 55 at 2–3]. After Burney filed his compassionate release motion, his belated reply brief, and the present motion for reconsideration, the Third Circuit upheld this argument in *United States v. Andrews*. 12 F.4th at 259–260. In *Andrews*, the Third Circuit found that "the text of the [P]olicy [S]tatement explicitly limits its application to Bureau-initiated motions" and is therefore "not applicable— and not binding—for courts considering prisoner-initiated motions" for early release. *Id.* (collecting cases). In other words, *Andrews* held that the Policy Statement does not limit the

10

scope of information that a district court may consider when determining whether an inmate-initiated compassionate release motion presents extraordinary and compelling reasons for release. *Id.*

In the Court's view, *Andrews* does not require the Court to reconsider its ruling on Burney's motion for procedural and substantive reasons. Procedurally, Burney only raised his Policy Statement argument for the first time in his belated reply brief. "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *D'Alessandro v. Bugler Tobacco Co.*, No. CIV A 05-5051 JBS, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (quoting *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir.1992)). The case upon which Burney relied to support this argument in his reply brief was decided before his initial brief. *See United States v. Marks,* 455 F. Supp. 3d 17, 24–25 (W.D.N.Y. 2020), *appeal withdrawn*, No. 20-1404, 2021 WL 1688774 (2d Cir. Jan. 5, 2021). Other cases which Burney cites in his motion for reconsideration and subsequent correspondence also predate his initial motion. [*See, e.g.*, Dkt. 55 at 2–3 (citing *Rodriguez*, 451 F. Supp. 3d at 393; *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019), *appeal dismissed*, No. 20-1603, 2020 WL 5642024 (8th Cir. Apr. 1, 2020))]. Burney does not explain why he omitted this argument from his opening brief or why this argument now warrants reconsideration of his initial motion.[5]

*Andrews* also does not require reconsideration because it does not present "an intervening change in the controlling law; … or the need to correct a clear error of law or fact or to prevent

---

[5] The Court understands that Burney filed his initial compassionate release motion *pro se*, and that *pro-se* filings "must be liberally construed." *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). But this requirement does not permit the court to "disregard completely procedural requirements or rules of substantive law." *Varrone v. Bilotti*, 851 F. Supp. 54, 57 (E.D.N.Y. 1993)

11

manifest injustice." *Max's Seafood Café*, 176 F.3d at 677. Although *Andrews* now binds the Court, it cannot be the basis for a legal error because the Court rejected Burney's motion seven months before *Andrews* was decided. *Andrews* was not an "intervening change in controlling law" because it was decided after Burney filed his motion for reconsideration.

Substantively, the Court finds that it did not err under *Andrews*. *Andrews* found that the Policy Statement is not binding on district courts, but also found that district courts may look to the Policy Statement for guidance because it "still sheds light on the meaning of extraordinary and compelling reasons." *Andrews*, 12 F.4th at 260. The Court did not use the factors set forth in the Policy Statement to exclude or avoid any of Burney's arguments for release in his initial motion. Likewise, Burney does not point to any facts or information in his initial motion which the Court failed to consider or refused to consider by relying on the Policy Statement.

*Andrews* also does not disturb the Court's finding that the sentencing factors outlined in 18 U.S.C. § 3553(a) warrant dismissal of Burney's Motion. The *Andrews* court's Policy Statement ruling only applies to the "extraordinary and compelling reasons" portion of the Court's analysis. It does not affect the Court's need to weigh the sentencing factors under 18 U.S.C. § 3553(a) before granting motions for compassionate release. As the Third Circuit has recognized elsewhere, Courts have discretion to decide that the § 3553(a) preclude compassionate release even after finding that extraordinary and compelling reasons exist. *See Hogan*, 852 F. App'x at 636. Here, the Court found that the § 3553(a) factors "weigh against granting Defendant Burney's request" even if he presented extraordinary and compelling reasons for release. [Dkt. 40 at 6]. *Andrews* does not apply to or require consideration of this independent basis for denying Burney's motion, even if it constitutes an intervening change in controlling law.

12

### c. Even if the Court Reconsidered its Prior Ruling under *Andrews*, Burney Would Not Be Entitled to Early Release

The Court's ultimate decision to deny Burney's motion would not change, even if *Andrews* required reconsideration. The Court rejects Burney's argument that the risk of COVID-19 infection and illness warrant release because conditions at FCI Fort Dix, where Burney currently resides, have improved considerably. According to BOP statistics, there are no active COVID-19 cases among inmates at FCI Fort Dix. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 28, 2021); *see also United States v. Del Rosario Martinez*, 524 F. Supp. 3d 1062, 1067 (S.D. Cal. 2021) (finding no extraordinary or compelling reasons for early release for defendant with two high-risk health conditions because "[d]efendant is housed at an institution where the spread of the virus is currently minimal to virtually nonexistent."). FCI Fort Dix has also fully vaccinated 1,938 inmates, which weighs against early release. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 28, 2021). Widespread vaccination is likely to reduce the risk of transmission within the facility. *See United States v. Wise*, No. CR 16-00576, 2021 WL 2660258, at *3 (D.N.J. June 29, 2021) (citing Ctrs. for Disease Control and Prevention, *COVID-19: COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (updated May 20, 2021)); *see also United States v. Goston*, No. 15-20694, 2021 WL 872215, at *2 (E.D. Mich. Mar. 9, 2021) (denying compassionate release to defendant because "his access to the COVID-19 vaccine mitigates any extraordinary and compelling reasons that might otherwise justify release.").

Moreover, Burney admits that he received two doses of the Pfizer vaccine. [Dkt. 54 at 1]. The vaccine will reduce the likelihood that Burney contracts and/or becomes seriously ill from the COVID-19 virus and its variants. *Delta Variant*, CDC,

13

https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Aug. 23, 2021). *See also United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) (finding that the "risk posed to an inoculated [inmate] is not an extraordinary and compelling reason for his release."); *United States v. Ulmer*, No. 18-00579-3, 2021 WL 844579 (E.D. Pa. Mar. 5, 2021) (citing vaccination as a basis for denying compassionate release). Burney argues that he received the vaccine because he believed that vaccination might increase his chances of being transferred to a "low-security prison." [Dkt. 54 at 2]. He also believed full vaccination was necessary to establish extraordinary and compelling circumstances that warrant release. [Dkt. 54 at 1–3]. Burney cites several cases where district courts denied compassionate release requests after the petitioners refused COVID-19 vaccines. [Dt. 54 at 3 (citing *United States v. Jackson*, No. 15CR2607PAMTNL, 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (citation omitted)]. Burney seems to argue that full vaccination should not defeat his compassionate release request when refusing vaccination would also defeat his request.

Burney's argument is mistaken. Courts that have denied requests for early release by inmates that have received or refused vaccines have relied on the same underlying principle: vaccines reduce the risk of severe illness and/or hospitalization due to COVID-19. *See* Eli S. Rosenberg, et al., *New COVID-19 Cases and Hospitalizations Among Adults, by Vaccination Status — New York, May 3–July 25, 2021*, CDC Morbidity and Mortality Weekly Report, Aug. 18, 2021 https://www.cdc.gov/mmwr/volumes/70 /wr/m m7034e1.htm ("In this study, current COVID-19 vaccines were highly effective against hospitalization (VE >90%) for fully vaccinated New York residents, even during a period during which prevalence of the Delta variant increased…."). The availability of COVID-19 vaccines has allowed inmates like Burney

14

to mitigate the risk of contracting and becoming severely ill due to the COVID-19 virus. For that reason, vaccines have generally made the case for early release due to COVID-19 less compelling. Thus, the fact that some courts have denied early release to inmates for refusing COVID-19 vaccines does not mean that inmates who *accept* the vaccine *do* present extraordinary and compelling reasons for early release as Burney argues here.

The Court also finds that the "full slate" of factors which Burney cites throughout his communications to the Court do not warrant release. [Dkt. 55 at 4]. Burney argues that, even if COVID-19 health risks do not justify release, the conditions the virus has created at FCI For Dix are extraordinary and compelling. He also argues that COVID-19 has made the conditions of imprisonment harsher than anticipated at the time of sentencing [Dkt. 55 at 6]. For example, he argues that the pandemic has limited his communication with family members and "has limited all of the programming and vocational programs" at FCI Fort Dix, which also prevent him from earning good-time credit. [Dkt. 55 at 7]. The Court understands that the COVID-19 pandemic has produced unprecedented difficulties at FCI Fort Dix and throughout the world. But courts cannot release every prisoner enduring these difficulties "because the Court would then be obligated to release every prisoner." *Wright*, 2020 WL 1976828, at *5.

Burney also cites several medical conditions, including "auto-immune like symptoms," which place him at higher risk of illness from COVID-19. [Dkt. 43 at 2–3]. As noted above, the vaccine will reduce Burney's risk of contracting and becoming seriously ill from the COVID-19 virus. Moreover, Burney's "general allegations of medical condition[s], without the necessary specificity, are insufficient to establish the rare circumstances that would justify a grant of compassionate release." *United States v. Carazolez*, Crim. No. 18-0081, 2020 WL 5406161, at *4 (D.N.J. Sept. 9, 2020). Burney also alleges that he suffers from "chronic nerve and musculoskeletal pain," "gastrointestinal issues," and osteoarthritis, among others. [Dkt. 43 at 2–

15

3]. But Burney indicates that he is on medication for these conditions, does not indicate how these ailments threaten his wellbeing, and does not explain how release from custody will remedy these conditions.

The Court also finds that Burney's concerns for his mother and son do not warrant early release. Burney reiterates that his mother is ill but does not dispute the Court's prior finding that she "is cared for at a rehabilitation and nursing center." [Dkt. 43 at 3]. Instead, he states that his concern for his mother and lack of communication with her due to the pandemic has been an "emotional drain." [*Id.*]. Burney also claims that his twenty-three-year-old son is struggling with "employment," finding a place to live, ad "psychological issues." [Dkt. 43 at 3–4]. Burney claims that early release would allow him to "lead his son to live a legal and productive life." [*Id.*]. While the Court is sympathetic to Burney's family concerns, they do not amount to extraordinary and compelling reasons for early release.

Finally, the Court does not doubt Burney's claim that has endured harassment from other inmates because he is Korean. [Dkt. 54 at 9]. But the Court does not find that this harassment by itself constitutes an extraordinary and compelling reason for early release. *See United States v. Boulyaphonh*, No. 3:17-CR-0450-B-2, 2021 WL 2354976, at *3 (N.D. Tex. June 8, 2021) (finding that allegations of race-based harassment by inmates and prison staff did not constitute an extraordinary and compelling basis for relief).

16

## V. Conclusion

For the reasons discussed above, the Court will deny Burney's motion for appointment of counsel and motion for reconsideration. An appropriate order will follow.


October 25, 2021 /s/ Joseph H. Rodriguez

Hon. Joseph H. Rodriguez, USDJ